Bellacosa, J.
(dissenting in part). I concur in the modification by this Court that releases the Transport Workers Union from the jurisdictional purview and power of the State Division of Human Rights (SDHR) in this case. My divergence with respect to the New York City Transit Authority’s responsibilities as an employer relates to the remedial corrective action necessitated by (1) the substantial party modification of this case, (2) inherent procedural regularity, and (3) a case record riddled with evidentiary and legal complications.
Myers started her bus driver job on June 27, 1988, and was discharged on October 10, 1988. For her approximately three months’ employment, her employer, the Transit Authority, now alone, stands responsible for the SDHR imposed penalty of $50,000 in mental anguish damages and eight years’ back pay.
As in State Div. of Human Rights v Carnation Co. (42 NY2d 873, 875), I believe the prudentially preferable next procedural step for this case is a remand to the agency for such further proceedings as may be necessary and appropriate to consider the employer’s sole responsibility under the Executive Law. Such remand should include reexamination of the appropriate and supportable sanction. The case merits an opportunity for *92 an untangled presentation and assessment of one of the two pivotal discrimination factors — "undue economic hardship” as it impacts this public transportation entity and employer in its relationship with its other employees (see, Executive Law § 296 [10] [c]; State Div. of Human Rights v Carnation Co., supra, 42 NY2d, at 875; Matter of Schweizer Aircraft Corp. v State Div. of Human Rights, 48 NY2d 294, 298-299; see also, Trans World Airlines v Hardison, 432 US 63, 84 ["To require TWA to bear more than a de minimis cost in order to give (petitioner) Saturdays off is an undue hardship.”]).
"Accommodation” of the employee’s Sabbath observance beliefs and personal work scheduling preferences is the corresponding discrimination factor to be weighed in this case, to be sure, but it appears to be given priority by the majority in the rationale and result, absent the benefit of a remand for complementary and thorough consideration of both prongs in the light of the union’s removal from the case as a party. The "accommodation” component is not fairly assessed in virtual isolation at this judicial hindsight point in the case. Moreover, this record, examined against the backdrop of the critical modification and evidentiary developments of this case, suffers a skewed perspective, illustrated by the set of substituted judicial retrospective hypotheses as to how the case might have been tried and the accommodation burden satisfied. A remand would remedy that.
The Transport Workers Union’s role has been central to this controversy up to now. Inasmuch as our unanimous substantive modification removes the union from the case as a party— coupled with the peculiarly and poorly developed record on the tension between the "accommodation” and "undue economic hardship” aspects and some of the acknowledged legal and evidentiary errors and misconceptions of the Division (majority opn, at 90, n 2) in its handling of this recurring controversy — I believe an untangled assessment by the Division is indicated so all remaining parties may have a fresh opportunity to satisfy their respective burdens.
Indeed, that precise remedial direction was used by this Court in Carnation, in a procedurally distinguishable circumstance that is nevertheless prudentially apt, where the Court stated:
"The record in this case is not sufficiently developed to determine, as a matter of law, whether retaining complainant in his former position would have *93 resulted in undue economic hardship to the employer. If, as the employer contends, designating a qualified substitute for complainant’s Saturday shift would entail any significant increase in costs, that would be enough to establish undue hardship. It should be obvious that an undue economic hardship does not require any threat or undermining of the economic stability of an enterprise. It would be enough that a palpable increase in costs or risk to industrial peace would be required in order to accomplish the end sought by the employee. But, without an evidentiary hearing, it cannot be determined definitively whether the employer could have accommodated appellant’s schedule without such significant cost or risk” (State Div. of Human Rights v Carnation Co., supra, 42 NY2d, at 874-875).
If such corrective action was necessary there — with a private employer and no union involvement and ultimate party disentanglement, as here — then that remedial direction makes eminent good sense here due to the legal, evidentiary, statutory, penalty and policy features of this case. That is hardly a "second bite” and is more akin to a "fair shake.”
This dissent as to the corrective action upon the party modification reflects my vote to modify in a significant, additional, remedial respect by remitting to the Appellate Division "with directions to remand to the Division of Human Rights for further proceedings” (State Div. of Human Rights v Carnation Co., supra, at 875).
Chief Judge Kaye and Judges Simons, Smith and Levine concur with Judge Titone; Judge Bellacosa dissents in part in a separate opinion; Judge Ciparick taking no part.
Order modified, etc.